### IN THE UNITED STATES DISTRICT COURT
### FOR THE DISTRICT OF MARYLAND

**RUTH WILCOX**
    Plaintiff,

v.

**SERVIS ONE, INC. d/b/a BSI**
**FINANCIAL SERVICES,** *et al.*
    Defendants

Case No. 1:19-cv-02535

---

### MEMORANDUM OF LAW IN SUPPORT OF PLAINTIFFS'
### MOTION FOR PARTIAL SUMMARY JUDGMENT

Plaintiff Ruth Wilcox ("Plaintiff" or "Ms. Wilcox"), through her undersigned counsel and pursuant to Fed. R. Civ. P. 56, hereby files this Memorandum of Law[1] in support of her Motion for Partial Summary Judgment ("Motion") and says:

I. **INTRODUCTION**

Ms. Wilcox presently has pending before the Court statutory and common law claims[2] related to her former relationship with Defendants Servis One, Inc. d/b/a BSI Financial Services ("BSI") and Wilmington Savings Fund Society, FSB, as Trustee for Brougham Fund I Trust

---

[1]    This memorandum is supported by Plaintiff's annotated Statement of Undisputed, Material Facts in Support of Plaintiff's Motion for Partial Summary Judgment attached hereto and its supporting exhibits. Within this memorandum, Plaintiffs will cite to the referenced material facts in that statement as "MF ___" as appropriate.

[2]    These pending claims include: (i) Count I under the Maryland Consumer Protection Act, Md. Code Ann., Com. Law §13-101 *et seq.* ("CPA") and the Maryland Consumer Debt Collection Act, Md. Code Ann., Com. Law § 14-201, *et seq.* ("MCDCA") against both Defendants; (ii) Count II under the Real Estate Settlement Procedures Act, 12 U.S.C.A. § 2605 ("RESPA") against just BSI; (iii) Count III under the Fair Credit Reporting Act, 15 U.S.C. §§ 1681, *et seq.* ("FCRA") against BSI; (iv) Count IV common law breach of contract against both Defendants; and (v) Count V under the Maryland Mortgage Fraud Protection Act, Md. Code Ann., Real Prop. § 7-401, *et seq.* ("MMFPA"). *See* ECF. 1.

("Brougham") (collectively "Defendants").  Before Ms. Wilcox paid off and satisfied her former mortgage loan by paying the materially inaccurate sums claimed due by BSI, BSI acted as a collector and mortgage servicer on behalf of Brougham. Brougham owned the loan and collected and attempted to collect from Ms. Wilcox indirectly through BSI.

While there are many other issues and parts to Plaintiff's claims before the Court, 'the central issues presented in this Motion concern:

(i)     the failure of the Defendants to identify any facts in support of any of their affirmative defenses which cannot proceed further in this action as a matter of law;

(ii)    the undisputed evidence that BSI sought to collect sums and did collect sums from Ms. Wilcox which were inaccurate and were not owed in relation to the mortgage loan; and

(iii)   the Defendants' liability to Ms. Wilcox as a matter of law pursuant to her remedial claims under the CPA and MCDCA.

Plaintiff believes that after nearly of year and half of discovery and multiple extensions of time to complete discovery which involved thousands of documents, multiple depositions, interrogatories, and requests for admissions, the Defendants have not identified any facts or admissible evidence to support their affirmative defenses and cannot dispute that Ms. Wilcox paid the sums she was obligated to pay under the actual terms of her loan, but the Defendants demanded and collected from her sums not actually owed.  The Defendants accomplished their objectives by failing to follow their legal duties, failing to honor the actual terms of Ms. Wilcox's loan, and by utilizing means and methods of collection which are unfair, unconscionable, deceptive, and abusive.

Addressing the partial relief sought by the Plaintiff will aid the Court, the trier of fact, and the Parties by focusing the remaining aspects in this case on those issues which are actually in dispute.  As part of this Motion, Plaintiff requests that the Court determine and conclude as follows as a matter of law:

A. Because the Defendants have not identified any facts in support of their affirmative defenses in either their pleading before the Court and in discovery, Plaintiff is entitled to entry of summary judgment in her favor and against the Defendants on their affirmative defenses.

B. Ruth Wilcox previously obtained a personal, mortgage loan to acquire to her former home and property located at 7416 Hawkins Drive, Hanover, MD 21076 dated January 26, 2006 ("Wilcox Loan").

C. The terms and conditions of the Wilcox Loan were memorialized into a Note and Deed of Trust by Ms. Wilcox and the original lender.  Thereafter, Ms. Wilcox and the then lender or its authorized agent(s) entered into certain, written modifications of the Wilcox Loan effective on October 1, 2009 (GMAC Modification), January 21, 2016 (Statebridge Modification), and September 1, 2018 (BSI/Brougham modification).

D. The Wilcox Loan's express terms and conditions, as modified, obligated Ms. Wilcox to pay principal, interest, and certain escrow sums calculated pursuant to the Real Estate Settlement Procedures Act ("RESPA") and state law.  None of the modifications agreed to by Ms. Wilcox or the lenders (or their authorized agents acting on their behalf) ever modified these express terms and conditions in relation Ms. Wilcox's obligations to pay escrow sums as part of payment pursuant to the requirements of RESPA and state law.

E. Since October 25, 2016, Servis One, Inc. d/b/a BSI Financial Services ("BSI") has collected and attempted to collect payments from Ms. Wilcox related to the Wilcox Loan.

F. From October 25, 2016 to at least February 2019, Wilmington Savings Fund Society, FSB, as Trustee for Brougham Fund I Trust ("Brougham") was the owner of the Wilcox Loan and it collected and attempted to collect payments from Ms. Wilcox related to the Wilcox Loan through BSI who acted as its authorized agent.

G. Ms. Wilcox, BSI, and Brougham previously entered into a written Settlement Agreement, effective September 1, 2018, in which it was agreed that Ms. Wilcox's obligation on the Wilcox Loan would have the following material terms:

   o The total loan balance due on the Wilcox Loan equaled $282,114.25.
   o The monthly principal and interest due on the Wilcox Loan would equal $1,201.26.
   o The monthly escrow payment due on the Wilcox loan would equal $263.96.  It was also agreed that the escrow payment may be subject to future modification.

H.  Ms. Wilcox timely paid and BSI collected from Ms. Wilcox the total monthly sums BSI represented to her that she was actually obligated to pay (i.e. $1,462.22) on the Wilcox Loan for the months of September 2018 through February 2019.

I.  Ms. Wilcox timely paid and BSI collected from Ms. Wilcox total monthly sums in excess of what BSI represented to Ms. Wilcox that she was obligated to pay (i.e. $1,423.48) on the Wilcox Loan for the months of March 2019 through August 2019.

J.  BSI was not permitted to impose, charge and attempt to collect from Ms. Wilcox late fees since she had not missed her monthly payments or paid after the grace period permitted under the terms of the Wilcox Loan that BSI represented to her were owed for the months of September 2018 through August 2019.

K.  BSI was not permitted to impose, charge and attempt to collect from Ms. Wilcox escrow sums in excess of in excess of what it represented to her were owed under the Wilcox Loan as modified for the months of September 2018 through August 2019.

L.  Commencing after October 4, 2018 through the payoff of the Wilcox Loan in August 2019, BSI repeatedly represented and attempted to collect from Ms. Wilcox sums it knew she was not required to pay including:

   o  The Defendants' own legal fees incurred in the prior litigation.
   o  Inaccurate escrow sums Ms. Wilcox was not legally obligated to pay and were not owed (from March 2019 through May 2019).
   o  Late fees when Ms. Wilcox had timely paid and BSI had collected sums in excess of what BSI admitted Ms. Wilcox actually owed on the Wilcox Loan (from March 2019 through June 2019).
   o  Other various fees and charges including bankruptcy fees and charges, foreclosure costs, etc. which were not owed or obligated under the terms of the Wilcox Loan as modified.

M.  In reliance to the Defendants' demands for sums not owed by Ms. Wilcox, she notified BSI of the errors and attempted to have it correct the Defendants' records and communications.

N.  On August 26, 2019, Ms. Wilcox sold the 7416 Hawkins Drive property.  As part of the sale BSI attempted to collect and did collect a claimed payoff balance of $286,091.11 from Ms. Wilcox that was not owed by her and was knowingly in excess of what Ms. Wilcox was actually obligated to pay pursuant to the terms of the Wilcox Loan as modified.  In reliance to BSI's demand for the excess payment sum as part of the payoff, Ms. Wilcox proceeded with the transaction and the payment sum demanded by BSI was made to it.

O.  In light of the undisputed, material facts detailed in Plaintiff's Motion for Partial Summary Judgment and those stated herein, the Court does find as a matter of law pursuant to Plaintiff's claims in Count I of her Complaint (ECF. 1) that the Defendants, as persons and collectors subject to the Maryland Consumer Protection Act and Maryland Consumer Debt

4

Collection Act, liable as a matter of law for acting unfairly, deceptively, or abusively while knowingly asserting rights to collect sums and actually collecting sums not owed by Ms. Wilcox through unconscionable means in relation to the Wilcox Loan. Having found the Defendants liable to Ms. Wilcox on each of her claims in Count I of her Complaint, Ms. Wilcox shall be permitted to pursue damages pursuant to Md. Code Ann., Com. Law §§ 13-408, 14-203 to be proven at trial.

II.    **SUMMARY OF MATERIAL FACTS NOT IN DISPUTE**[3]

Ms. Wilcox previously took out a mortgage loan ("Wilcox Loan") to acquire her prior home in Anne Arundel County which had several standard and uniform terms and conditions. **MF. C-E**. From time to time the Wilcox Loan was modified to address certain terms and conditions. **MF C, G-J**. At no time, however, were the Wilcox Loan's terms changed in writing or otherwise to alter (i) the terms governing the loan's grace period for payments without sustaining a late fee (**MF D, G, K**) or (ii) the terms governing how the escrow payments due on the loan would be calculated (**MF G, K**). The Parties before the Court also previously entered into an agreement which established certain terms related to the Wilcox Loan the loan's balance, total monthly payment due, and escrow portion of Ms. Wilcox's payment due as of September 1, 2018. **MF J-K**.

Since October 25, 2016, BSI has collected and attempted to collect payments from Ms. Wilcox related to the Wilcox Loan. **MF. M, O**. From October 25, 2016 to at least February 2019, Brougham was the owner of the Wilcox Loan and BSI acted as its authorized agent in relation to the Wilcox Loan. **MF. N**. Ms. Wilcox timely paid and BSI collected from Ms. Wilcox the total monthly sums she was obligated to pay (i.e. $1,462.22) on the Wilcox Loan for the months of September 2018 through February 2019. **MF. O**.

---

[3]    This summary also incorporates the details of the Statement of Undisputed, Material Facts in Support of Plaintiff's Motion for Partial Summary Judgment attached hereto.

In 2019 BSI conducted an annual escrow analysis and determined the 'correct' monthly escrow portion of the payment that was due from Ms. Wilcox pursuant to RESPA and the terms and conditions of the Wilcox Loan and DOT equaled $222.22.  **MF P**.  BSI also confirmed that the agreed upon principal and interest sum of $1201.26 would remain the same.  **MF P**.  As a result of the annual escrow analysis, Ms. Wilcox's monthly payment, as calculated by BSI, should have reduced from a former monthly payment of $1,462.22 to $1,423.48 commencing March 2019.  **MF P**.  From March 2019 through August 2019, Ms. Wilcox timely paid and BSI collected from her a sum in excess of the 'correct' sum calculated by BSI each of her monthly payments (**MF P**) actually due on the Wilcox Loan. **MF Q**.

Following the Parties' prior settlement, the Defendants attempted to collect and did collect inaccurate sums from Ms. Wilcox that were not owed.  **MF S**.  Specifically, the Defendants demanded that Ms. Wilcox pay (i) their attorney fees from the prior settlement and she did not owe (**MF I, S, SS, VV**).  In addition, the Defendants imposed and demanded Ms. Wilcox pay late fees (**MF P**) even though Ms. Wilcox timely made each required payment (**MF O-P, Q, T**). The Defendants also demanded that Ms. Wilcox pay excessive escrow sums that were not owed or obligated by her.  **MF F-G, K, U-W, Y**.

Ms. Wilcox notified and inquired of BSI about its errors and asked it to correct its records. **MF AA-BB**.  BSI only partially responded to Ms. Wilcox's inquiry but did admit it had attempted to collect materially incorrect escrow sums and it disregarded certain of her inquiries.  **MF CC-LL.**  Ms. Wilcox again notified and inquired of BSI about its errors and failure to respond to her original inquiries and asked it to correct its records.  **MF MM.**  Again, however, BSI only partially responded to Ms. Wilcox's inquiry but it erroneously claimed Ms. Wilcox owed it BSI's prior attorney fees from the prior litigation which she did not owe. **MF NN-VV.**

When Ms. Wilcox was preparing to sell her former home, BSI provided her two inaccurate payoff sums in which it knowingly demanded she pay it sums it knew she did not owe. **MF WW-XX.** Specifically BSI demanded Ms. Wilcox's payoff payment include sums—i.e. its own attorney fees—from the prior litigation she did not owe. **MF I-J, XX-AAA.** And BSI collected that knowingly inaccurate sum from Ms. Wilcox as a result of the sale of her former home. **MF ZZ-AAA.** BSI only returned a portion of excessive sum collected by it nearly a year and half into this litigation and only after Ms. Wilcox had incurred over $100,000 in attorney fees and costs. **MF BBB.**

BSI can identify no facts in support of any of its affirmative defenses. **MF A-B.**

III.   **STANDARD OF REVIEW**

Pursuant to the federal rules of civil procedure,

> A party may move for summary judgment, identifying each claim or defense--or the part of each claim or defense--on which summary judgment is sought. The court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law.

Fed. R. Civ. P. 56(a). *See also* 2010 *Advisory Committee Comments* to Fed. R. Civ. P. 56 related to (a)(g)(recognizing a party may seek summary judgment on all or part of a claim as a result of the rules change and a court "may properly decide that the cost of determining whether some potential fact disputes may be eliminated by summary disposition is greater than the cost of resolving those disputes by other means, including trial").

This Court has explained the standard further as follows:

> Rule 56 of the Federal Rules of Civil Procedure provides that a court "shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed.R.Civ.P. 56(c). A material fact is one that "might affect the outcome of the suit under the governing law." *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 248, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986). A genuine issue over a material fact exists "if

the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Id.* In considering a motion for summary judgment, a judge's function is limited to determining whether sufficient evidence exists on a claimed factual dispute to warrant submission of the matter to a jury for resolution at trial. *Id.* at 249. In undertaking this inquiry, this Court must consider the facts and all reasonable inferences in the light most favorable to the nonmoving party. *Scott v. Harris,* 550 U.S. 372, 378, 127 S.Ct. 1769, 167 L.Ed.2d 686 (2007).

*Puryear v. Capital One Bank, N.A.*, No. CIV.A. RDB-12-3222, 2014 WL 103506, at *2 (D. Md.

Jan. 10, 2014).

In addition,

When both parties file motions for summary judgment…the court applies the same standards of review. *Taft Broad. Co. v. United States,* 929 F.2d 240, 248 (6th Cir.1991); *ITCO Corp. v. Michelin Tire Corp.,* 722 F.2d 42, 45 n. 3 (4th Cir.1983) ("The court is not permitted to resolve genuine issues of material fact on a motion for summary judgment—even where ... both parties have filed cross motions for summary judgment.") (emphasis omitted), *cert. denied,* 469 U.S. 1215, 105 S.Ct. 1191, 84 L.Ed.2d 337 (1985). The role of the court is to "rule on each party's motion on an individual and separate basis, determining, in each case, whether a judgment may be entered in accordance with the Rule 56 standard." *Towne Mgmt. Corp. v. Hartford Acc. & Indem. Co.,* 627 F.Supp. 170, 172 (D.Md.1985). "[B]y the filing of a motion [for summary judgment] a party concedes that no issue of fact exists under the theory he is advancing, but he does not thereby so concede that no issues remain in the event his adversary's theory is adopted." *Nafco Oil & Gas, Inc. v. Appleman,* 380 F.2d 323, 325 (10th Cir.1967); *see also McKenzie v. Sawyer,* 684 F.2d 62, 68 n. 3 (D.C.Cir.1982) ("[N]either party waives the right to a full trial on the merits by filing its own motion."). However, when cross-motions for summary judgment demonstrate a basic agreement concerning what legal theories and material facts are dispositive, they "may be probative of the non existence of a factual dispute." *Shook v. United States,* 713 F.2d 662, 665 (11th Cir.1983).

*Robinson v. TSYS Total Debt Mgmt., Inc.*, 447 F. Supp. 2d 502, 505–06 (D. Md. 2006).

IV.   **ARGUMENT**

i.   **The Defendants Have Not Met Their Burden to Proceed to Trial on Their Affirmative Defenses**

The Defendants have not identified any facts in support of any of their stated affirmative defenses in either their Answer or in discovery.   **MF A-B**.   Therefore, Plaintiff is entitled to an entry of summary judgment in her favor on each if the 14 stated affirmative defenses in

Defendants' Answer. *Int'l Ship Repair & Marine Servs., Inc. v. St. Paul Fire & Marine Ins. Co.*, 944 F. Supp. 886, 891 (M.D. Fla. 1996)("partial summary judgment may be used by the Court to dispose of affirmative defenses. The effect being that if the moving party sustains its burden, then the affirmative defenses will be struck by the Court"); *France Stone Co. v. Charter Twp. of Monroe*, 790 F. Supp. 707, 710 (E.D. Mich. 1992)("Defendant's last argument, that plaintiff's motion is procedurally defective, is not persuasive. Plaintiff filed its motion pursuant to Fed.R.Civ.P. 56(a) and (d)…. the rule clearly states that a motion for summary judgment may be brought on a claim 'or any part thereof.' Therefore, plaintiff's motion is not procedurally deficient"). *See also* § 2736 Summary Judgment on the Issue of Liability, 10B Fed. Prac. & Proc. Civ. § 2736 (4th ed.)("the revised [summary judgment] rule authorizes a summary-judgment motion on a part of a claim or defense"); 73 Am. Jur. 2d Summary Judgment § 65("Under the federal summary judgment rule, a party may move for summary judgment on a part of any claim or defense, and if the court does not grant all the relief requested by the motion, it may enter an order stating any material fact—including an item of damages or other relief—that is not genuinely in dispute and treating the fact as established in the case")(footnote omitted).

Without any factual basis to support their affirmative defenses, the Defendants cannot maintain the defenses. *Celotex Corp. v. Catrett*, 477 U.S. 317, 327 (1986)("Rule 56 must be construed with due regard…for the rights of persons opposing such claims and defenses to demonstrate in the manner provided by the Rule, prior to trial, that the claims and defenses have no factual basis"). As Judge Titus explained previously that "[a]n assertion of an affirmative defense is insufficient if it does not contain 'enough facts' demonstrating that it is 'plausible on its face.' *Id."  Malibu Media, LLC v. Doe*, No. RWT 13-CV-0512, 2015 WL 1402286, at *2 (D. Md. Mar. 25, 2015). *See also Long v. Welch & Rushe, Inc.*, No. CIV.A. DKC 13-3712, 2014 WL

2963975 (D. Md. June 30, 2014)("The undersigned adopts the majority view that affirmative defenses must meet the *Twombly* and *Iqbal* standards because defendants should be held to the same pleading standard as plaintiffs and boilerplate defenses require counsel to conduct unnecessary discovery. *See Bradshaw,* 725 F.Supp.2d at 535–36; *see also Barry v. EMC Mortg.,* Civil Action No. DKC 10–3120, 2011 WL 4352104, at *3–4 (D.Md. Sept. 15, 2011) (explaining rationale for applying *Twombly* and *Iqbal* standards to affirmative defenses). Affirmative defenses must 'ensure that an opposing party receives fair notice of the factual basis for an assertion contained in a [ ] defense.' *Haley Paint Co. v. E.I. Du Pont De Nemours and Co.,* 279 F.R.D. 331, 336 (D.Md.2012) (*quoting Bradshaw,* 725 F.Supp.2d at 536)").

Since the Defendants' Answer and discovery responses identified no facts to support any of their Affirmative Defenses, as a matter of law Ms. Wilcox is entitled to judgment pursuant to Fed. R. Civ. P. 56(a) in her favor since it would be prejudicial and unfair for her to have to prepare for these defenses at trial when Defendants themselves failed to identify any facts in discovery in support of the alleged defenses.  *See* **MF A-B**.   No plaintiff would be permitted to proceed to trial if the plaintiff failed to identify any facts in support of his claims and the same result should apply here in relation to the Defendants who concealed from Ms. Wilcox whatever facts they believe support any of their affirmative defenses even when asked direct questions.  **MF A-B.** Such a result would simply be unjust and in violation of Fed. R. Civ. P. 1.

Based upon the foregoing legal argument and undisputed, material facts described herein, Plaintiff requests entry of judgment in her favor pursuant to Fed. R. Civ. P. 56(a) upon the following: Because the Defendants have not identified any facts in support of their affirmative defenses in either their pleading before the Court and in discovery, Plaintiff is also entitled to entry of summary judgment in her favor and against the Defendants on their affirmative defenses as

stated in ¶ A on Page 3 *supra*.

>    ii.    **For the Months of September 2018 through August 2019, Ms. Wilcox Timely Paid to BSI More Than She She and BSI Agree She was Required to Pay in Relation to the Wilcox Loan as Modified**

When a mortgage loan is executed it establishes legally enforceable obligations on the parties to the instrument. *Miller v. Pac. Shore Funding*, 92 F. App'x 933, 937 (4th Cir. 2004). Those obligations can only be modified by written and signed agreement of the borrower and the lender (typically through the lender's authorized agent) which demonstrates mutual assent. *Spaulding v. Wells Fargo Bank, N.A.*, 714 F.3d 769, 777 (4th Cir. 2013); *Markoff v. Kreiner*, 23 A.2d 19, 25 (Md. 1941)("When a contract is required by the Statute of Frauds to be in writing, an agreement modifying its provisions cannot be proved by parol" and must also be in writing signed by the parties to the agreement); *Calomiris v. Woods*, 727 A.2d 358, 368 (Md. 1999)("…courts should enforce the terms of unambiguous written contracts without regard to the consequences of that enforcement"); Md. Code Ann., Real Prop. §§ 5-103, 5-104; MD. CODE REGS. 09.03.06.08(A).

The undisputed discovery evidence shows Ms. Wilcox timely paid to BSI and BSI collected from Ms. Wilcox the monthly payments BSI admits she was obligated to actually pay pursuant to the express written terms of the Wilcox Loan for the months of September 2018 through August 2019.  **MF. O, Q.**  Specifically she was required to pay a total monthly payment of $1,462.22 for the months of September 2018 through February 2019 related to the Wilcox Loan and BSI collected that amount before or during the grace period allowed under the Wilcox Loan terms before any late fee(s) could be imposed.  **MF. J, O**.

In 2019 BSI on behalf of Brougham elected to conduct an annual escrow analysis of the Wilcox Loan to modify the escrow portion of Ms. Wilcox's payment that was due in relation to the Wilcox Loan; the 'correct' monthly escrow portion of the payment that was due from Ms.

Wilcox (pursuant to the Wilcox Loan terms (*see* Argument IV(ii)(a*) infra*)) was reduced to $222.22 (**MF P**) from the prior monthly, escrow sum of $260.96 (**MF J**).   Therefore, BSI required Ms. Wilcox to pay a total sum under the Wilcox a monthly sum of $1,423.48 for the months of March 2019 through August 2019.  **MF P**.  Ms. Wilcox timely paid monthly sums to BSI and BSI collected from Ms. Wilcox monthly sums in excess of $1,423.48.  **MF. Q**.

Put another way, during the operative period of time governing this dispute (i.e. the months of September 2018 through August 2019), the principal and interest portion of monthly payment due to the Defendants on the Wilcox Loan by Ms. Wilcox equaled $1,201.26.  **MF J, P**.  In addition to that sum, Ms. Wilcox paid more than the sum calculated by BSI that was due under the Wilcox Loan as amended toward the monthly escrow sum as required pursuant to RESPA and state law. **MF H-K**.   There is no dispute that Ms. Wilcox timely paid to BSI and BSI collected from Ms. Wilcox required monthly payments it calculated she owed.  **MF. O, Q.**

> **a.** <u>Ms. Wilcox Satisfied Her Duty to Pay the RESPA's Escrow Payment Requirements Determined by BSI from March 2019 through August 2019</u>

The express terms and conditions of the Wilcox Loan concerning Ms. Wilcox's duty to make escrow payments to her lender incorporated RESPA and state law to determine the required escrow amount that would be due from her.  **MF. F-G, K**.  The Fourth Circuit recently explained the general escrow requirement as follows:

> One of RESPA's reforms targeted "the amounts home buyers are required to place into escrow accounts established to insure the payment of real estate taxes." § 2601(b)(3). In general, an "[e]scrow account" is an "account that a servicer establishes or controls on behalf of a borrower to pay taxes" and other charges. 12 C.F.R. § 1024.17(b); *accord Escrow*, 5 Oxford English Dictionary 391 (2d ed. 1989) ("A deposit held in trust or as a security."). RESPA permits lenders to require borrowers to send the tax payments to a mortgage servicer for escrow (instead of the borrower paying taxes directly to the government). *See* 12 U.S.C. § 2605(g); 12 C.F.R. § 1024.17. The practice of paying taxes through servicers assures lenders that tax payments are made, thus protecting against tax liens and other risks to a lender in the event of foreclosure. *See* Ronald H. Jarashow, Comment, *The*

> *Improper Use of Tax and Insurance Escrow Payments by Mortgagees*, 25 Cath. U.
> L. Rev. 102, 102–04 (1975).
>
> If a federally related mortgage contract imposes this requirement on a borrower,
> then federal law imposes certain reciprocal requirements on the mortgage servicer.

*Harrell v. Freedom Mortg. Corp.*, 976 F.3d 434, 437 (4th Cir. 2020).

One requirement placed on mortgage servicers like BSI under RESPA is to reevaluate a borrower's escrow account on an annual basis. 12 U.S.C. § 2609(c). An "escrow account analysis" means the accounting that a servicer conducts to determine: (1) the appropriate target balances for the escrow items (for example, taxes, insurance) to be paid under the account; (2) the borrower's monthly escrow payments for the upcoming twelve-month period; and (3) whether any surpluses, shortages, and deficiencies exist. Reg. X § 1024.17(b). In addition, the accounting process is referred to as a "trial running balance" in which the servicer makes projections of "target balances" over the course of an "escrow account computation year." *Id.* As in this case, once an escrow account has been established (like Ms. Wilcox's escrow account was established at the origination of the Wilcox Loan (**MF E-F**)), RESPA prohibits a servicer from requiring a borrower to pay into the escrow account a monthly amount greater than one-twelfth of the total of all disbursements payable during the computation year. 12 U.S.C. § 2609(a); Reg. X § 1024.17(c). The servicer may also require a "cushion" on the account which may not exceed an amount equal to one-sixth of the total disbursements for the year (the equivalent of two months of escrow payments). 12 U.S.C. § 2609(a); Reg. X § 1024.17(d).[4]

---

[4]     Maryland law also adds other requirements related to Ms. Wilcox's escrow account. Md. Code Ann., Com. Law §§ 12-109, 12-109.1, 12-109.2. Com. Law § 12-109.1(c) prohibits any demands to maintain excessive sums not authorized by the loan instruments.

For the time period BSI sought initially to apply to the 2019 Annual Escrow Accounting (i.e. March 2019 through February 2020), there is no dispute that its calculations would rely on the sums it had collected and paid in 2018 toward the 2018 taxes and insurance premium. **MF. U-V.** There is also no dispute that BSI collected from Ms. Wilcox and paid real estate taxes to Anne Arundel County for 2018 in the total sum of $1,560.27 and it also collected from Ms. Wilcox and paid to her property insurance company the sum of $2,690.27 in 2018. **MF. L.** Based on the actual escrow expenditures made by BSI in 2018, the necessary monthly escrow payment Ms. Wilcox was obligated to pay at the time BSI sought initially to apply to the 2019 Annual Escrow Accounting (i.e. March 2019 through February 2020) equaled $222.22. **MF Y-Z, EE.**

Ms. Wilcox timely paid in excess of this sum to BSI along with the monthly principal and interest owed on the Wilcox Loan. **MF. Q.**

> In servicing escrow accounts in compliance with RESPA, it is outcome not methodology that is determinative. *See e.g., Mark v. Keycorp Mortgage Inc.,* 1996 WL 465400, *2 (N.D.Ill.1996); *Aitken v. Fleet Mortgage Corp.,* 1992 WL 33926, at *2 (N.D.Ill.) (holding breach of the plaintiff's mortgage contract occurred if the balance in the escrow account exceeded the maximum set by the it was irrelevant whether the excessive balance resulted from individual item analysis or "picking a number out of a hat").

*Miller v. Chevy Chase Bank, F.S.B.*, No. 97 C 4494, 1998 WL 142394, at *4 (N.D. Ill. Mar. 24, 1998).

There is no material dispute that Ms. Wilcox satisfied the escrow requirements calculated by BSI and BSI collected those sums in relation to the Wilcox Loan from March 2019 through August 2019. Granting summary judgment on this fact will narrow the Parties' disputes and arguments going forward. Even though the Defendants have identified no facts in support of their affirmative defenses (*see* Argument § IV(i) *supra*), the Defendants claim Ms. Wilcox was required to pay whatever escrow payment they said she owed even when they freely admit their initial

calculation was based on their own errors. **MF. U-Z**.  The Court should grant summary judgment on this issue in Ms. Wilcox's favor since as a matter of law and contract she paid the required sums required under the express contractual terms governing the Wilcox Loan.   The Fourth Circuit has recognized where parties to the contract invoke a federal standard, like the parties to Ms. Wilcox's loan have done (**MF. F**), the parties cannot avoid that agreement and it may be enforced under state laws.  *Coll. Loan Corp. v. SLM Corp., a Delaware Corp.*, 396 F.3d 588, 598-599 (4th Cir. 2005).

> **b.** <u>Since Ms. Wilcox satisfied her actual obligations under the Wilcox Loan and timely paid the contractual sums she was obligated to pay, BSI was not permitted to impose any late fees onto her account from March 2019 through June 2019.</u>

Since Ms. Wilcox timely paid what sums she was required to pay pursuant to the terms and conditions of the Wilcox Loan from March 2019 through June 2019 (**MF O, Q**; *see also* Argument at §ii(a) *supra*), she owed no late fees on the Wilcox Loan.  **MF D, G, K**.  Specifically, a late fee was only appropriately imposed on Ms. Wilcox's account if Ms. Wilcox failed to pay the "full amount of any monthly payment by the end of 15 calendar days after the date it is due."  Ex. 5, Note at ¶ 6.  The full monthly payment actually owed by Ms. Wilcox from March 2019 through June 2019 (including interest, principal, and escrow) equaled $1,423.48.  **MF. P**.  Ms. Wilcox timely paid to BSI a sum in excess of that amount. **MF. Q**.  Pursuant to her agreed upon contractual terms, she therefore owed no late fees.  **MF D, G, K**.  Even though she timely paid her required payments as calculated by BSI, BSI imposed late fees on Ms. Wilcox's mortgage account. **MF P**.

The Defendants seem to believe they are entitled to impose and collect late fees even when they demand borrowers like Ms. Wilcox pay sums that are not owed.  But pursuant to the express terms and conditions of the Wilcox Loan they are not permitted any such right under Maryland

law and the contracts governing the relationship of the Parties.  **MF D, G, K.** *See also Spaulding,* 714 F.3d at 777; *Markoff,* 23 A.2d at 25; *Calomiris,* 727 A.2d at 368; Md. Code Ann., Real Prop. §§ 5-103, 5-104; MD. CODE REGS. 09.03.06.08(A).

Further, BSI admits that the payments demanded by it from March 2019 through May 2019 that formed the basis of its claimed right to impose the late fees were calculated in error caused solely by it and its agents.  **MF U-Y.**  However, nowhere in the Wilcox Loan did any party to the instruments as modified ever agree that Ms. Wilcox would owe late fees if the lender or its agents made errors in calculating what sums were actually owed on the loan.  **MF D, G, K;** Ex. 5, Note at ¶ 6.  *See also Spaulding,* 714 F.3d at 777; *Markoff,* 23 A.2d at 25; *Calomiris,* 727 A.2d at 368; Md. Code Ann., Real Prop. §§ 5-103, 5-104; MD. CODE REGS. 09.03.06.08(A).

Since there is no material dispute that Ms. Wilcox satisfied her obligations and timely paid to BSI the required monthly payments due under the Wilcox Loan from March 2019 through June 2019, BSI had no right to impose late charges onto the loan based on its own errors and miscalculations.  Granting summary judgment on this fact will narrow the Parties' disputes and arguments going forward.

**c.**   <u>BSI Had No Right to Attempt to Collect and Actually Collect from Ms. Wilcox its Own Attorney Fees Incurred in the Prior Litigation.</u>

The express terms and conditions of the Wilcox Loan and the parties' prior settlement agreement and this Court's Order, provided that the parties were responsible for their own attorney fees incurred.  **MF. H-I.**  Notwithstanding that promise and written agreement, BSI attempted to collect the attorney fees it incurred in the prior action from Ms. Wilcox and did in fact collect them from has as a result of the sale of her home and the payoff demand it made to release the lien on her property to sell to another.  **MF. M, S-T, BB, FF, SS, UU—AAA.**  BSI only acted to refund a portion of the excessive sums wrongfully collected by it from Ms. Wilcox the excessive sums

after more than a year of litigation and she incurred more than $100,000 in attorney fees and costs.

**MF. BBB.**  BSI admits it had no right to impose and collect its own attorney fees incurred from the prior limitation from Ms. Wilcox.  **MF.  S, FF, SS, YY-AAA**.

Since there is no material dispute that Ms. Wilcox did not owe the Defendants the sums claimed by them related to their own attorney fees incurred in the prior litigation, BSI had no right to impose the fees onto Ms. Wilcox's account based on its own errors and miscalculations. Granting summary judgment on this fact will also narrow the Parties' disputes and arguments going forward.

    **d.**  <u>Entry of Partial Summary Judgment in Favor of Ms. Wilcox Concerning her Legal Obligations under the Wilcox Loan for the Months of September 2018 through August 2019, Will Narrow the Issues Going Forward in this Action</u>

Based on the foregoing undisputed facts and the law governing the Parties summarized in § IV(ii)(a)-(c) *supra*, Ms. Wilcox requests the Court grant her Motion on the following issues identified on ¶¶ B-N on pages 3-4 *supra*.  These issues will significantly resolve the disputed facts and issues going forward at later stages of the litigation.

**iii.**    <u>**Based upon the Undisputed Material Facts, Ms. Wilcox is Entitled to Judgments of Liability Against Both Defendants and in her Favor Under the MCDCA and CPA**</u>

There is no dispute of material fact that the Defendants attempted to collect and did collect sums from Ms. Wilcox that were not owed by her.  **MF. S-Y, WW-AAA**.  In light of these admissions and the others discussed *supra*, Ms. Wilcox is entitled to judgment as to liability against the Defendants as a matter of law under her claims pursuant to the MCDCA and CPA.

The Maryland's Court of Appeals recently described the remedial statutes that for the basis of Ms. Wilcox's claims in Count I as follows:

> [T]he CPA prohibits all trade practices that are unfair, abusive or deceptive in, among other things, the collection of consumer debts. *See* CL §§ 13-301(14)(iii);

13-303(5). The General Assembly further instructed that the CPA shall be "construed and applied liberally to promote its purpose." CL § 13-105.

The CPA serves as a primary source of state oversight and regulation of debt collection activities. "Consumer credit" and "consumer debts" are express subjects of the CPA. *See* CL § 13-101(d) (defining "consumer credit" and "consumer debt" as "credit, debts or obligations ... which are primarily for household, family, or agricultural purposes"). The CPA makes it unlawful to "engage in any unfair, abusive, or deceptive trade practice" in "[t]he extension of consumer credit" or "[t]he collection of consumer debts." CL §§ 13-303(4); (5)….

The MCDCA regulates any "person collecting or attempting to collect an alleged debt arising out of a consumer transaction." (sic) BR § 14-201(b) (defining "collector"). The MCDCA prohibits eleven categories of conduct when collecting debts, including placing harassing or abusive calls to a debtor or claiming, attempting, or threatening to enforce a right with knowledge that the right does not exist. CL §§ 14-202(6); (8)….Unlike the CPA, the MCDCA does not contain any exemption for lawyers engaged in debt collection activities.

Although MCDCA authorizes a private right of action (CL § 14-203), it does not provide for its own public enforcement. Rather, the General Assembly incorporated a provision into the CPA making it an "unfair or deceptive trade practice" to engage in conduct that violates the MCDCA. CL § 13-301(14)(iii).

*Andrews & Lawrence Prof'l Servs., LLC v. Mills*, 223 A.3d 947, 961–62 (Md. 2020).

Here, pursuant to the MCDCA there is no dispute that the Wilcox Loan is a consumer debt arising out of a consumer transaction. **MF. C**. *See also* Md. Code Ann., Com. Law § 14-201(c)(defining "Consumer transaction" to "mean[] any transaction involving a person seeking or acquiring real or personal property, services, money, or credit for personal, family, or household purposes"). Further, there is no dispute that the Defendants qualify as "collectors" under the MCDCA. **MF M-O, R-W, Y, KK, VV, WW-AAA**. *See also* Md. Code Ann., Com. Law § 14-201(b)(defining "collector" to "mean[] a person collecting or attempting to collect an alleged debt arising out of a consumer transaction"). Further, it has been recognized previously that mortgage actors in the position of the Defendants here qualify as collectors who are subject to the MCDCA. *See e.g. Marchese v. JPMorgan Chase Bank, N.A.*, 917 F. Supp. 2d 452, 464 (D. Md.

2013)(recognizing the loan servicer to be qualified as a collector under the MCDCA); *Aghazu v. Severn Sav. Bank, FSB*, No. CV PJM 15-1529, 2018 WL 1851147, at \*5 (D. Md. Apr. 18, 2018)(finding as a "as a matter of law that [the borrower] has standing to bring a claim against [the servicer] and [and owner of the borrower's mortgage loan] under the MCDCA—[since] she is a consumer under the Act, her home loan qualifies as a consumer transaction, and Defendants attempted to collect a debt from [the borrower] that she has long claimed she does not owe"); *Ervin v. JP Morgan Chase Bank NA*, No. CIV.A. GLR-13-2080, 2014 WL 4052895, at \*3 (D. Md. Aug. 13, 2014)("The MCDCA [and] MCPA…govern the activities of mortgage servicers in the state of Maryland").[5]

There also can be no dispute that the relationship between the Parties is also governed by the CPA.

Courts have applied the MCPA to unfair or deceptive trade practices undertaken in connection with services performed by mortgage servicers pursuant to a deed of

---

[5]     Plaintiff acknowledges that this Court seemed to suggest recently that a mortgage servicer is not subject to the MCDCA and MCPA despite the case law and plain reading of the statutory definitions. *See e.g. Alexander v. Carrington Mortg. Servs., LLC*, No. CV RDB-20-2369, 2020 WL 7319252, at \*4 (D. Md. Dec. 11, 2020). Part of the Court's rationale appeared to believe a servicer can only apply as a collector under the MCDCA if the debt is in default. *Id.* Respectfully, that conclusion and analysis is incorrect. A plain reading of Com. Law § 14-201(b) does not limit the definition of collector to those seeking defaulted debts only. Rather it applies to all creditors and their collection agents on the face of the plain language of the statute. *See also Andrews*, 223 A.3d at 950. Further, the Court of Appeals has cautioned against adding exemptions to the CPA and MCDCA not enacted by the Legislature itself. "If [an] exemption should be [established], then that is the role of the Legislature, not the role of this Court." *Id.* at 969. It is true that mortgage servicers are not considered "debt collectors" subject to the Fair Debt Collection Practices Act ("FDCPA") unless the debt was in default when the servicing transferred to them. *El v. Hollingsworth*, No. CV ELH-16-4016, 2017 WL 3531484, at \*7 (D. Md. Aug. 17, 2017). However, the statutory definitions of the FDCPA <u>do not apply to any claims before this Court in this action</u> and the limits under the FDCPA therefore do not apply here as well. If the Court believes otherwise, Plaintiff requests the Court to exercise its discretion to certify questions of law to the Maryland Court of Appeals to determine the actual scope of the statutes before the Court in relation to the Parties and issues raised herein. Md. Code Ann., Cts. & Jud. Proc. § 12-603.

trust. *See, e.g., Allen v. CitiMortgage, Inc.,* 2011 WL 3425665, at *10 (D.Md. Aug.4, 2011) (denying a motion to dismiss MCPA deceptive practice claims related to alleged misrepresentations by mortgage servicer regarding the status of plaintiff's existing mortgage and the status of plaintiff's requested loan modification); *Neal v. Residential Credit Solutions, Inc.,* 2013 WL 428675, at *4 (D.Md. Feb.1, 2013) (denying a motion for summary judgment on MCPA deceptive practice claims related to alleged misrepresentations by mortgage servicer regarding whether plaintiffs were obligated to make mortgage payments).

*Hibdon v. Safeguard Properties, LLC*, No. CIV. PJM 14-591, 2015 WL 4249525, at *3 (D. Md. July 9, 2015).

"[T]he CPA prohibits all trade practices that are unfair, abusive or deceptive in, among other things, the collection of consumer debts. *See* CL §§ 13-301(14)(iii); 13-303(5)." *Andrews*, 223 A.3d at 961.   There is no dispute that here that the Plaintiff's CPA claim concern (i) a consumer debt previously owed by her (**MF C, M-O, R-W, Y, KK, VV, WW-AAA**) and (ii) the Defendants' attempted and actually collection of that debt (**R-W, Y, KK, VV, WW-AAA**).

Because both the MCDCA and CPA govern the relationships between the Parties subject to this action and the undisputed facts discussed further infra, Plaintiff is entitled to a judgment of liability to be entered against each Defendant pursuant to the claims asserted by her pursuant to the CPA and MCDCA in Court I of her Complaint.

    **a.**  <u>Plaintiff is entitled to a Judgment of Liability Against each Defendant on Her MCDCA Claims Before the Court</u>

Plaintiff has asserted two claims under the MCDCA against each Defendant pursuant to: (i) Com. Law §14- 202(8) and (ii) Com. Law §14- 202(11).  Com. at ¶ 90.

An MCDCA claim pursuant to Com. Law §14-202(8)

prohibits collectors from "claim[ing], attempt [ing], or threaten[ing] to enforce a right with knowledge that the right does not exist." Md. Code Ann., Comm. Law, § 14–202(8). "This has been held to mean that a party may not attempt to enforce a right with actual knowledge or with reckless disregard as to the falsity of the

existence of the right." *Kouabo,* 336 F.Supp.2d at 475 (citing *Spencer v. Hendersen–Webb, Inc.,* 81 F.Supp.2d 582, 594–95 (D.Md.1999)).

*Allen v. Bank of Am., N.A.*, 933 F. Supp. 2d 716, 729 (D. Md. 2013). *See also LVNV Funding LLC v. Finch*, 2017 A.3d 202, 217 (Md/ 2019)("CL § 14-202, which is part of MCDCA, expressly prohibits a debt collector from claiming, attempting, or threatening to enforce a right with knowledge that the right does not exist. An unlicensed debt collector who, in the furtherance of its business, attempts to collect a debt through litigation unquestionably is attempting to enforce a right that, *for it*, does not exist")(emphasis in original); *Andrews*, 223 A.3d at 967 (lawyers acting as collectors "may not claim, attempt, or threaten to enforce a right with knowledge that the right does not exist. CL § 14-202(8)").

Here there is no dispute that the Defendants attempted to collect and did collect from Ms. Wilcox their own attorney fees incurred from the prior litigation that they knew they had to right to seek. *See also* Argument at §IV(ii)(c) *supra.* Since there is no dispute of material fact that the Defendants knew they were parties to the prior settlement agreement and this Court's Rule 111 Order and neither permitted them to impose and collect their attorney fees from Ms. Wilcox, Ms. Wilcox is entitled to a judgment of liability against each pursuant to Com. Law §14-202(8). Further, as a matter of law, BSI knew it was not permitted to provide inaccurate payoff statements as part of its collection activities (*see* 15 U.S.C.A. § 1639g, 12 C.F.R. § 1026.36(c)(3)), but it knowingly did do so anyway and actually collected fees and sums it was not entitled to do so in violation of Com. Law §14- 202(8). **MF. WW-AAA.**

The Defendants also cannot dispute they have a legal duty (pursuant to 15 U.S.C.A. § 1638(f) and 12 C.F.R. § 1026.41) to send accurate periodic statements to borrowers like Ms. Wilcox. In her case the Defendants admit that they sought in multiple periodic statements to claim a right to collect sums from Ms. Wilcox in which they had no right to collect and did so while

disclosing to her that BSI was acting as a collector.  **MF. M, S-T**.  Such conduct was in violation of Com. Law §14- 202(8).

Finally, the Defendants attempted to collect escrow sums from Ms. Wilcox they had no right to collect (*see* Argument at §IV(ii)(a) *supra*) and imposed late fees onto Ms. Wilcox's mortgage account they had no right to impose since she paid to BSI and BSI collected the sum she was actually obligated to pay (*see also* Argument at §IV(ii)(b) *supra*).  Such conduct was again in violation of Com. Law §14- 202(8).[6]

Ms. Wilcox's other MCDCA claims are brought pursuant to Com. Law §14-202(11).  Com. at ¶ 90.  This statute specifically provides

> In collecting or attempting to collect an alleged debt a collector may not….(11) Engage in any conduct that violates §§ 804 through 812 of the federal Fair Debt Collection Practices Act.

Com. Law §14-202(11).

Ms. Wilcox identified in her Complaint that the basis of her claim pursuant to Com. Law §14-202(11) was the Defendants' wrongful conduct which: (i) used false, deceptive, or misleading representation or means in connection with the collection of any debt; or (ii) used unfair or unconscionable means to collect or attempt to collect any debt. ).  Com. at ¶ 90 (citing to 15 U.S.C.

---

[6]     In candor to the Court, Plaintiff does wish to acknowledge that the Maryland Court of Appeals will hear arguments in two MCDCA cases in March 2021 concerning the scope of the statute to claims related to amounts owed.  *See e.g. Nationstar Mortg. LLC v. Kemp*, 471 Md. 285, 241 A.3d 870 (2020); *Chavis v. Blibaum & Assoc, P.A.*, 471 Md. 100, 240 A.3d 852 (2020). Plaintiff believes her MCDCA claims concern the Defendant' unlawful methods of collection— i.e. seeking sums not owed as a matter of law and contract.  If the Court views the dispute about disputed sums of money, then the Court may wish to wait until the Court of Appeals rules in *Kemp* and *Chavis* as to what exactly the scope of the MCDCA includes.  It should also be noted that neither *Chavis* nor *Kemp* involve claims under the Com. Law §14-202(11) which on its face does not limit claims under its provision to excludes disputes about sums claimed due.

§§ 1692e, 1692f).  Unlike her MCDCA claims under Com. Law §14-202(8), Ms. Wilcox is not required to demonstrate the Defendants' knowledge to pursue her claims under Com. Law §14-202(11).  Further, since this Court has previously recognized that mistakes of law are not defenses under the MCDCA (*Bradshaw v. Hilco Receivables, LLC*, 765 F. Supp. 2d 719, 732 (D. Md. 2011)) and the undisputed material facts demonstrate that the Defendants attempted to collect and did collect sums not lawfully owed to them by Ms. Wilcox and the Defendants utilized means and methods not permitted under the law (i.e. inaccurate periodic statements and payoff statements) or the documents actually governing the Wilcox Loan (*see* Argument at §IV(ii)(a)-(c) *supra*) there is no dispute that the Defendants used unfair or unconscionable means to collect or attempt to collect the Wilcox Loan in violation of Com. Law §14-202(11).

Based on the foregoing argument and authorities, as collectors the Defendants were not permitted to engage in conduct that is not authorized by the Wilcox Loan while utilizing inaccurate periodic statements and payoff statements.   The undisputed material facts demonstrate they did so anyway, and Ms. Wilcox is entitled to a judgment of liability against each Defendant pursuant to her MCDCA claims pursuant to Com. Law §14-202(11).

> **b.** Plaintiff is Entitled to a Judgment of Liability Against each Defendant on Her CPA Claims Before the Court

For the purposes of this Motion, Plaintiff moves for summary judgment as to the Defendants' liability to her on two general claims under the CPA against each Defendant.  First, she is entitled to summary judgment as to liability for any violation of the MCDCA which is a *per se* violation of the CPA pursuant to Com. Law §13-301(14)(iii).  Com. at ¶ 92.  Second, she is also entitled to summary judgment as to liability of Com. Law §13-303(5) which provides that the

Defendants "may not engage in any unfair, abusive, or deceptive trade practice...in…[t]he collection of consumer debts."  Com. at ¶ 94.  *See also Andrews,* 223 A.3d at 961.

As stated in Argument §IV(iii)(a) *supra*, the Defendants have engaged in conduct which constitutes multiple violations of the MCDCA.  As such, any one of those violations also establishes the Defendants' liability under the CPA to Ms. Wilcox.  Com. Law §13-301(14)(iii).  *See also Bradshaw*, 765 F. Supp. 2d at 733("In addition, because violations of the MCDCA are expressly designated as 'unfair or deceptive trade practices' under the Maryland Consumer Protection Act, this Court also finds that [the defendant] has violated that statute as well. As a result, summary judgment will be entered in favor of the Plaintiffs on these claims").

Alternatively, since the Defendants do not dispute the material facts that they sought to collect consumer debts, fees, and charges that were not owed and that had no right to collect under the Parties' agreements and BSI's own admissions governing the Wilcox Loan (Argument §IV(ii)(a)-(c), they have each also violated Com. Law §13-303(5) by acting unfairly, deceptively, and/or abusively in their collection practices in relation to Ms. Wilcox.  Even though Ms. Wilcox, in reliance to their collection demands, attempted to have the Defendants correct their errors with detailed submissions to BSI, it largely ignored her inquiries and failed to even correct all of their admitted errors or even attempt to communicate and review all records available to BSI to understand the problem.  **MF. AA-VV**.  In further reliance to BSI's demand for an inaccurate payoff sum (inflated by at least $10,270.00), Ms. Wilcox paid the sum demanded by BSI as a result of the sale of her former home which BSI admits included sums not owed by her.  **MF. WW-AAA**.

As a result of these undisputed facts and the discovery record, the Defendants' debt collection practices and conduct in relation to Ms. Wilcox is unfair, deceptive and abusive and in

violation of Com. Law §13-303(5).  Therefore she is entitled to entry of summary judgment as to the Defendants' liability pursuant to the CPA to be entered in her favor and against each of the Defendants on her claims arising under Com. Law §13-303(5).

      **c.**  <u>Ms. Wilcox is Entitled to Entry of Partial Summary Judgment in Her Favor Against Each of the Defendants under Count I of her Complaint Pursuant to the MCDCA and CPA</u>

Based on the foregoing undisputed facts and the law governing the Parties summarized in § IV(a)-(b) *supra*, Ms. Wilcox requests the Court grant her Motion and find the Defendants liable to her on her claims under the MCDCA and CPA as identified on ¶ O on page 4 *supra*.  This partial judgment will significantly resolve the disputed facts and issues going forward at later stages of the litigation.

V.    **CONCLUSION**

Based upon the foregoing argument, attached material facts not in dispute, Ms. Wilcox respectfully requests the Court grant partial judgment in her favor as requested herein.

Respectfully submitted,

*/s/ Phillip Robinson*
Phillip Robinson, Attorney, Bar No. 27824
Consumer Law Center LLC
8737 Colesville Road, Suite 308
Silver Spring, MD  20910
Phone (301) 448-1304
Email:
phillip@marylandconsumer.com

*Counsel for the Plaintiff*